May it please the Court, I have the honor this first time I've been in front of this court and I've been practicing law for 23 years so I appreciate the opportunity. I represent a lady by the name of Jessie Nash. When I first met Jessie she was 62 years old, she's now 68. And that's important in terms of this is obviously a Social Security disability case and the reason I say that is if Jessie would be 42 or 52 I would have told her to refile rather than go all the way up to the Court of Appeals and then we would try to reopen a previous application or win at the second application. But she doesn't have that she had a 6th grade education and what I think was noteworthy both by the Administrative Law Judge. It's an aside but is this it for SSI or just for disability? Disability. She had worked in fact both the Administrative Law Judge and the. Her hours are used up but she's still eligible for SSI. Well she'd be eligible. Prospectively. Retirement, yeah. But it'd be SSDI that she would be eligible for at 62 until she turned retirement age for regular benefits. Is that where she is at this point? Yes. So we're really talking about a period of time? Correct. From 62 until I would believe it's 65 at that time. I know they've been talking about moving it to 67 and later but I think once you get to 65 you're on Social Security. What's her birth year? What's her birth year? 50. It was. 1956-50. I think it's 66 but go ahead. We're off the point. Okay. She had a 6th grade education. She did go on to get a GED and the Administrative Law Judge, Judge Ferguson pointed out she did have an impeccable work history and that was also noted by a magistrate who had the recommended disposition to the federal court judge, Judge Baker, that this is a lady that worked hard all her life and just got to the point of having problems to where she couldn't work. Now at the administrative hearing before Judge Ferguson, they went over, Ms. Nash testified how out of a 5-day work week she could not guarantee 4 days. Her brother, Willie Kelly testified at the hearing how he would help her out, help her go to the bathroom and that as a brother he would not even consider hiring her based on the problems that she had. Then the judge asked the vocational expert, Mr. Elmore, assume she's going to miss 3 days a month. Can she work? And the answer to that question was no, which is why we believed she should have won at that hearing, but she didn't. So we pressed on. Now when I first started doing these cases many years ago, some of the questions that would be asked by the judge would be assume she's going to miss, when I first started doing it, assume she's going to miss 3-5 days a month. We've now gotten down to because of the unemployment being so low, they say assume she's going to miss 1-2 days a month. And if she can't, if she's going to miss those days, then she's going to be considered disabled, based on what the vocational expert will say. So going on to the recommended disposition that the magistrate had given to the federal judge, it was noted there were a couple of things as in the record does not contain any opinion from a medical provider that Nash needs to lie down frequently or prop her feet up, yet in one of the first visits she went to, which is in the record, certified record at 209, and this is important because it was one of the things that the administrative law judge had brought up was that her date of onset was 1-31-12, yet she wasn't able to go to a doctor, which was she was sent to a doctor by social security on October 21st, 2012. But in the recommended disposition they noted that there was no opinion from a medical provider that Ms. Nash needed to lie down frequently or prop her feet up, however in the diagnosis you will note that there is number four is lower back pain, and number three is morbid obesity. Now let me explain something about that because at that visit Ms. Nash, her height was 5'6 and her weight was 2-85, 2-85. In the conclusion, even though there is a diagnosis of lower back pain, in the conclusion there's nothing that the doctor says, and y'all can look at it, there's nothing that the doctor says that this lady needed to lose weight, which would have been obvious. And at 2-85 and 5-6, with a diagnosis of low back pain, and her testimony, and her brother's testimony that yes, she was going to need to lie down, and she had to lie down, that again this goes to her ability to sustain substantial gainful employment five days a week, week in, week out. But I think you're just, I think you're talking, arguing credibility issues. Well I'm arguing that in the recommended disposition we had asked, we had asked to have a hearing in front of the administrative, the chief, the district court judge, I'm sorry. And the reason we did that... But you know how rare a hearing is in federal court to go beyond the administrative record. You don't cite any cases where we've allowed that and I can't even remember one. I agree on that, although I do, I have cited a couple of cases where based on somebody's ability to work, and substantially, not just, not sporadically, which was the case in this case. I cited two, like the Ross and the Shaw. But are you arguing, let's stick with the hearing. You put it in your brief. Sure. That's, we almost, we almost never, in my experience, never order an evidentiary hearing in a district court because the law says, the Supreme Court says, you do it on the administrative record. If the administrative record is inadequate, then the right, the proper remedy is to remand to the agency. So your claim of error in the district court for refusing to call a hearing without a citation is, it's just not without merit. But it was going with the, as you correctly pointed out, there were things that the court had put in their disposition that we had disagreements about. Do you mean the magistrate judge, the United States magistrate judge? Yes. Or the ALJ? And that's what I'm citing. No, but you don't get a hearing before the district court because you disagree with the opinions of the magistrate judge. That's just not federal procedure in Social Security cases. Well, I... If the record is factually inadequate, it goes back to the agency. If the record is factually adequate, then you argue about what findings should be made, the ALJ should have made, whether there's substantial evidence for the ALJ's finding on the administrative record. And I believe I did argue that at the federal court in front of the district judge. And you raised it on appeal, but don't talk about the hearing. That's just not... Oh, no, I'm sorry. That issue is, that's a non-issue in my view. Well, the only reason I was raising it was because that was the recommended disposition, and it was in the recommended disposition of the magistrate, and I'm pointing out some inaccuracies in what they're basing it on. And as an example, they said that they, in the magistrate's disposition, said there was no record of diagnosis or treatment for the bladder issue that she had that required frequent breaks. Well, I agree with that. I went through the record quite carefully, and at 241, she reported urinary incontinence, and oxybutynin was prescribed in May, May 22nd. On June 5, there was a follow-up that records oxybutynin is being taken. There's no urology report. There's no note of a further complaint. And so the only thing, unless you have other things in the record on incontinence, the only thing this record supports is it was being medicated successfully. It was being medicated, but it was still there. It would be like taking... Well, there's no medical evidence it was still there as a potentially disabling condition. I think the ALJ was eminently sound in reading those two reports and saying, from a disability standpoint, this appears to be a non-issue, the incontinence, as a possibly disabling condition. I don't think it was more that the fact that... It's present for everybody over 50, but it's not disabling. Right. But with her, it was the need for frequent bathroom breaks, which was noted in the record earlier. You mean her testimony? And also on forms that she filled out and sent in. She noted that... Okay, but that's... But she had an employer that tolerated frequent bathroom breaks. Wait, wait, wait. That's a credibility of subjective complaints issue. I agree. Okay, so that's not a... The medical evidence is inadequate to support the ALJ's finding. It's an attack on his discounting of her subjective complaints. Then I would go back to the first issue raised, which was, she was going to miss time from work and we had a vocational expert that backed that up that said if she's going to miss three days... Yes, but what was the evidence she was going to miss three days from work? Her testimony. And we also had... Again, the low back diagnosis, the low back that I just reported that was there, when she wasn't working, she had no more insurance. So the first time she went to see a doctor, Social Security sent her to a doctor, which was October 21st, 2012, and in that record, the diagnosis by the Social Security doctor was lower back pain. And so, I mean, they did note that she had low back pain and she was taking medication, she was having pain wrap, she had a pain wrap put on. I think that's a report, that's not a... Well, that's a report of a subjective complaint by the patient, which then can be explored medically by a variety of tests that we see in all of these cases. That's true, but he did put restrictions on her, so he didn't just say, okay, then you have low back pain so you're free to go and we can let you... They weren't disabling restrictions. Okay. Does that mean my time's up? Oh, yeah. No, no, you've got more than three minutes. That's the rest of your time, though. That includes your rebuttal. I'll save it for rebuttal. Sure. Mr. Sides. May it please the court. My name is Jim Sides and I represent the appellee, the acting commissioner of the Social Security Administration, Nancy Berryhill. This case really examines the jurisdiction of the district court and really this appellate court in reviewing the commissioner's final decision in a disability case. The commissioner submits that Ms. Nash has not preserved any issue for consideration before this court because her argument lacks any articulation and development. That's not a failure to preserve. Well, let me ask it to you this way. The United States magistrate judge says, while Nash reported bladder problems, the record is devoid of any diagnosis or treatment for such an issue. That's wrong, right? That would be correct. Yeah, you agree that's wrong? Yes. As Judge Logan pointed out, that was a diagnosis based upon a self-report that for the first time she came in to the doctor and reported that she had urinary incontinence. So we got a diagnosis and there's also treatment because there's a pill, right? That is correct. Does the record reflect how often the pill was prescribed and given and re-prescribed and all that? It does. She went to this doctor two weeks before her ALJ hearing, so that's over two years after she alleged that she became disabled. Even though she alleges that she had incontinence back in January of 2012, had all of these various impairments while she was working for all this time, she didn't receive any treatment. Just two weeks before she has the ALJ hearing, she goes in to a doctor, reports urinary incontinence, gets the treatment for it, and then each of the two subsequent medical examinations, that diagnosis is dropped. So there is not a diagnosis of incontinence following after that. I missed the key word. Is what dropped, did you say? Dropped. It does not appear in the subsequent two medical reports. Are those by non-examining state doctors? No, it was not. Are they treating doctors or something? Go ahead. Yes, the first examination, she told Dr. Johnson, I think it was Dr. Johnson, yes, Dr. Johnson that she had urinary incontinence. He prescribed medication. After that, she saw Dr. Schock, who was just referred for examination of knee problems. Then after that, in June of 2014, she went back to Dr. Johnson for examination, and neither Dr. Schock's nor Dr. Johnson's second examination list incontinence as a diagnosis. Do we know if the pills were being taken? We know that a prescription was given. Prescription, that's, you know what I mean. Right. I can't verify that she did. How many prescriptions does the record reflect? There's only one. Okay. Do you know if it's refilled? That's what I'm driving at. I believe that the first prescription was for 30 days, and so since it was only two weeks between the first examination and the last examination, I would assume that she's under the same prescription. And you're pretty confident it's just 30 days of pills? I believe that it was 30 days of pills. There was given the right to refill, but since it was only two weeks, we can't verify. That ends the record? There's nothing else in the record? There's nothing else in the record. Did the ALJ discuss all that? The ALJ discussed the complaints at the hearing. He indicated that Ms. Nash had reported that she had bladder issues, and the ALJ did go through and examine subjective complaints throughout the decision. I'm talking about the medical. Anything in the medical record relating to the prescription of medication or physical examination for incontinence or bladder issues, was that mentioned by the ALJ in his discussion of the medical evidence as he came up with his determination of limitations so he could The ALJ said that there was not adequate medical evidence to support any type of bladder impairment. So isn't that a problem with this, that there's no discussion of it? Whatever it was, whatever the medical is, with respect to this issue, doesn't the ALJ have an obligation to discuss it, let the reader, let a reviewer understand that it was actually considered? What the ALJ did is he looked at the entirety of the evidence, and he made findings based upon the entirety of the evidence. As was mentioned, the very first examination, nine months after she stopped working, was a consultative examination in front of Dr. Dooley. In front of Dr. Dooley, she said that she had no urinary frequency, no urinary urgency, no incontinence. Does the medical record reflect those negatives? Or are you imputing that? In the review of systems, under Dr. Dooley's report, it specifically says that she denied it. Okay. There is, I would infer the fact that she does not report the need to lie down and prop up her feet, or that Dr. Dooley does not report that she said that, that also that was not a limitation that is supported either. Isn't there some testimony about propping up feet, though? Yes, there is testimony. Who's it by? You could help us. Who's the testimony by? Yes, the testimony is Mrs. Natchez. Well, how about, was it a brother? The brother indicated that he helped her to get up to go to the restroom. And he did not say that he lives with her, that sometimes he just comes over. So if she's living independently, obviously she's doing this on her own because she's not just sitting on the couch soiling herself. And just the fact that she has the opportunity right now to lie down and prop up her feet doesn't mean that that's a work limitation. There has to be more than simply the claimant's subjective complaints saying that these are limitations that I have. There has to be an evidentiary basis to that. And in this case, it is the burden of proof for Mrs. Natchez to prove her limitations and to prove disability. And there simply is not a preponderance of evidence in this case that would indicate these limitations of need to lie down, need to prop up the feet, need to frequently use the restroom. The ALJ only has to include the limitations that are supported by the record in the hypothetical question to the vocational expert. In this case, he did. The vocational expert testified that the past relevant work of telework, yeah, the telemarketer, that is an available job. So the ALJ's decision is well-supported by the vocational expert's testimony that the past relevant work being available. At this point, if the court has any further questions. I do have another question, and it goes back to the earlier discussion about the incontinence issue. If we read the ALJ's written decision, do we find in that decision a reference to Dr. Joseph's treatment notes with respect to incontinence? No. There is not a specific... Now, isn't that just a major problem with this? That the ALJ, we have to know that the ALJ considered the medical evidence, whatever it was. And that it's really unfair to make a credibility determination in a written decision without making reference to medical evidence that might, whatever it is, that might support the subjective complaint of the claimant. Isn't that just a big problem here? No. The ALJ is required to consider all the evidence. He is not required to discuss all of the evidence. And even though there is a mere diagnosis of incontinence, a mere diagnosis alone cannot form the basis of the limitations. There has to be some evidence in the record supporting these limitations. The prescription. The prescription is a medication that was being prescribed and... Well, that's evidence. You said some evidence. When a doctor gives a prescription for something, that's some evidence something's there. Yes. We're not denying that the doctor diagnosed based upon her self-reports of incontinence. And it would be obviously reasonable for a doctor to be treating the symptoms that are reported. So, we're not contesting that there was medication that was prescribed. But there still has to be evidence of functional limitations resulting from the impairments. All that we can find in this evidence is a diagnosis for incontinence based upon a self-report, a prescription for medication that apparently was successful. But to me, you're missing a vital point here. We're reviewing the ALJ's written decision. We're not just doing some kind of a de novo review of all the evidence and making our own call. We're reviewing what the ALJ went through here. And we have cases that say it's a problem where the ALJ has ignored, appears to have ignored or omitted or forgotten about or overlooked medical evidence that would tend to support a subjective complaint. And it seems to me that you've got that problem here. What do you think about that? The ALJ, while he did not specifically state that Dr. Johnson diagnosed incontinence, he did make a finding that incontinence was not an impairment that was well supported. Go slowly with me. I don't think the word incontinence appears in the ALJ's report. Am I right or wrong? That would be correct. That would be correct. So the word you search is bladder, right? Bladder, yes. And it says she later added bladder problems when the ALJ is describing the initial allegations. And then do you live or die on this sentence? There is no persuasive evidence of bladder problems and no medical sources have identified or documented disabling limitations, period. Is that the only mentions of bladder? Yes. Those two times, right? That would be correct. Which is about as many times as it's mentioned in this record by a doctor. Although he did not specifically address Dr. Johnson's diagnosis, he did address the bladder issues. It wasn't something that he just forgot about. How do you know? Because he specifically stated that there was not a medical opinion supporting disability after he had mentioned discussion of the bladder issues. Well, you know, medical opinions don't determine disability. That would be correct. For social security purposes. That would be correct. So how do you know he didn't just forget, overlook that she had been to the doctor and he had treated her for this? Because the ALJ specifically in the decision says that he considered all of the evidence in the record and we should not assume that the ALJ did something other than what he said that he did. The ALJ in every single case, this is an incredibly short record. The fact that he is citing specifically to this doctor's report makes it highly unlikely that he just overlooked the incontinence. He specifically raised it or addressed the bladder issues and said that there weren't any limitations resulting from it. He does not have to include limitations from bladder issues in a hypothetical question that the record does not support. Are we conflating here the severe impairment inquiry with the subjective complaints of disabling impairment inquiry? I mean, the first question is incontinence or bladder problems. Is it a severe impairment? Right. What do you need in the record for that? He obviously did not consider it a severe impairment. That is correct. And there the absence of any medical opinion or evidence of medical treatment is almost conclusive on that, isn't it? What must? I mean, that it's not even in. A severe impairment has to be based on medical evidence. Correct. And here the only thing I see is the first visit she complains of it and he reports, quote, diagnosis and prescribes. And the second, it is not listed in her systems or issues in the way Dr. Joseph writes it up. It's not listed, which means when she came in she wasn't complaining about that. And he notes that the medication is being taken. Correct. And that's what we have. Yes. And on that, is that an adequate basis to find it's not a severe impairment? There has to be. Pretty clearly, yes. Yes, there has to be. Now what's the relevance? When it's not a severe impairment, what's the relevance in the fourth and fifth step analysis of disability? Yes. If it's a non-severe impairment, that entails that it does not involve a significant degree of limitation. Although the agency. It can still contribute to an overall disability. Correct. The agency can still and needs to consider both severe and non-severe impairments in the residual functional capacity. But, yes, finding at step two that it's not a severe impairment would entail that it does not involve a significant degree of limitation. I see my time is up. And so I thank this court for its consideration. Thank you. Thank you. Mr. Odom for rebuttal. Again, going back on the hypothetical of somebody being off work three to five days is now down to one to two days. And one of the reasons why I wanted to go into what the magistrate dealt with in terms of the back and the bladder is that now, when I first started doing these cases, that was mainly the hypothetical besides the usual ones. The last hypothetical would be assume this person is going to miss three to five days. Now we have hypotheticals that judges do pretty much across the board. Assume this lady is going to be off task 25% of the time. And the answer that the vocational expert will give to that pretty much every time is like assume she's going to be off work one to two days, and that is she's disabled. If anybody is going to be off task 25% of the time, then no, no employer is going to enjoy that. And so when going with the back and the bladder, there's not going to be too many employers that's going to want her having to lie down during the day or take frequent bathroom breaks. As she did point out at the beginning in terms of she had an employer that was receptive and kind of carried her along that way. And so that is not a hypothetical. But that was without medication. At that time she didn't have any insurance, Your Honor. No, you're right. I mean, that was a pre-onset date employment. That was not one of the failures of work, right? That was the last job she had before her alleged onset date. Correct. And that employer. But her date of onset was 1-31-12. I don't care about that. But the impact of the medication is there's no evidence of it because the prior employer was tolerating her need to go to the bathroom an inordinate amount of time before she was medicated. That's correct. Okay. Now then the question is since successful medication defeats claims of disability, the question is how successful was this medication? And I don't see anything in the record that tells us that. Well, that was, and as counsel for the other side has already pointed out, that was done in May of 2014 and the hearing was in June and there's nothing that you're going to be able to submit after the hearing. Let me ask it a different way. I believe the ALJ said she had three work attempts after the alleged onset date, but he said they were not substantial gainful employment. She tried. She was only trying and it wasn't successful. She was trying. Now does the record reflect whether the reason she was unsuccessful was incontinence? No. I didn't think so. I mean, there's nothing. You can't develop it out. It was the back pain that was the problem, right? Well, and I'll go back. That's a good point because, again, this is a lady that was 62 years old and had an impeccable work history. She didn't want to stop. She's had to borrow money from her family, and so this was not the route she wanted to go. She wanted to keep working, and that's why she didn't stop. She kept going. Now the question would be, based on what the vocational experts said, that if she's going to miss a day a week, which was in testimony, then there are no jobs. And I guarantee you there's not many employers for full-time work that are going to want their employee to only work four out of five days out of the week. But, yes, she wanted to keep going because this was not the route she wanted to go. And one other point is that's what I wanted her to be able to do with the magistrate and the federal district court judge was to sit in this room and listen to what is bothering the court about her case because she can't come to St. Louis. And we asked twice for a hearing so that she could have understood, hey, is it incontinence? Is it the back? What's bothering the court? We didn't have that opportunity. Can I just ask you one question just to clarify to make sure I'm remembering correctly? Did she testify at the hearing that she takes medication for an overactive bladder but that even with the medication she's always going back and forth to the restroom? Yes. And, in fact, the problem was, and I didn't realize it until I saw it, the oxybutyn or whatever the drug she's taking was inaudible. But if you read it, it was on page, I think it was 28, where she had described what it is that she was taking. It's inaudible. It's to help me with my bladder problem. Which is what? My overreactive bladder. And I'm pretty sure that was a medication because it followed naproxen for pain. I believe, again, based on what the one hypothetical that the administrative law judge did do with Mr. Elmore, it was proven that she was disabled because she would miss time from work. So I appreciate either an award or a remanding. Thank you, counsel. The case has been thoroughly argued and well briefed, and we'll take it under advisement.